Vincent A. Lupiano, J.
(dissenting). In this holdover proceeding brought by Columbia University, the tenant’s lease was made on April 1,1968, to commence on that day and to end on March 31, 1970. Tenant had been a student at Columbia University and five months prior to the making of this lease entered into an agreement of employment with the university as an instructor in philosophy. Paragraph 30 of the lease provides: “ This letting to the Tenant is made upon the expressed condition that at all times while this letting continues the Tenant shall be a member of the staff or student of Columbia University and this letting is part of the Tenant’s employment or student agreement. The Tenant agrees further that in the event the Tenant ceases to be a member of the staff or a student of Columbia University the Tenant will vacate the demised premises and surrender the same to the Landlord within thirty (30) days after Tenant ceases to be such staff member or student.” Tenant ceased to be an employee of Columbia University in June, 1969. He continued to occupy the apartment, paying the rent, and on October 26, 1971, Columbia sent him notice of termination of tenancy referring to paragraph 30 of the lease.
There can be no doubt that, if Columbia University had purchased a completely vacant multiple dwelling or waited until it was completely vacant and then used it as a “ school dormitory ”, i.e., as housing accommodations for students and members of the staff, it would have been exempt from rent control, since a “ school dormitory ” is specifically excluded by the definition of “ housing accommodations ” in the rent control law (Adminis *358 trativp Code of City of N. Y., § Y51-3.0, subd. e, par. 2, subpar. [b]). The fact that the university purchased some multiple dwellings and, as apartments became vacant by voluntary surrender of possession by tenants, devoted such vacant apartments to the exclusive use of students and members of the staff by leases giving.the right of possession only so long as the relationship continued, does not require a different holding. It is consistent with the statutory definition in .the rent control law of “housing accommodations” as embracing “any building * * * or any part thereof.” (§ Y51-3.0, subd. e), so that a building may have controlled apartments and noncontrolled portions thereof, such as offices leased to business, commercial or professional tenants or, as here, devoted to a use which qualifies for educational or any other exemption.
Section Y51-6.0 (subd. j, par. [2] of the Administrative Code, added by Local Law No. 30, effective July, 1970, providing that no certificate of eviction shall be issued to a college for the purpose of recovering possession or withdrawing accommodations for use as housing accommodations by students or members of its staff, does not affect the question of the validity of paragraph 30 of this 1968 lease of an apartment, previously and voluntarily vacated by its occupant, to a member of the university staff. In this connection, as indicative of the trend with respect to vacant apartments, note may be taken of paragraph (17) of subdivision f of section 2 of the New York City Rent, Eviction and Rehabilitation Regulations, added by Amendment No. 31, effective June 30,1971, pursuant to the amendment of the State enabling act (L. 1971, ch. 371) providing that housing accommodations which become vacant on or after June 30, 1971 by voluntary surrender of possession are not subject to control, unless the Rent Administrator determines that they became vacant because of landlord’s course of conduct.
The practice of Columbia University in devoting apartments in this multiple dwelling, as they become vacant, to dormitory use limited to students and staff members evinces a desire to avoid hardship with respect to the residential tenants and is compatible with a need for apartments as vacancies could reasonably be expected to occur. The university’s action in permitting the tenant herein to continue in occupation of the premises after the termination of his employment and in accepting rent for such period is consonant with its prior practice and under the terms of the lease and all the related circumstances, cannot be deemed a waiver of its rights so as to create a new tenancy from month to month subject to rent control. The premises being *359 noncontrolled under the educational exemption, and assuming the university’s action created a month-to-month tenancy, it does and should not follow that the apartment passed again into control. The condition upon which the lease was given is fixed in clear and unambiguous language and is integral to the educative function of the university. The tenant was fully aware of the fact that he had to be a student or staff member of the university to obtain possession of this apartment and that, in accordance with the express provision of the lease, the university could require him to vacate once the relationship terminated. The exceptional nature of the tenancy is of paramount importance.
Accordingly the final judgment appealed from should he affirmed.
Markowitz and Gold, JJ., concur in Per Curiam opinion; Lupiano, J. P., dissents in memorandum.
Final judgment reversed, etc.